## SOUTHERN RY. CO. v. JAMES S. McCARROLL.

Eastern Section. February 11, 1928.

Petition for Certiorari denied by Supreme Court, April 25, 1928.

Chas. H. Smith, of Knoxville, for plaintiff in error.
Johnson & Cox, of Knoxville, for defendant in error.

THOMPSON, J. The plaintiff McCarroll, while working as a section foreman was struck on the leg and injured by a cross-tie which one of his men pulled from a pile of cross-ties. He brought this suit under the Federal Employer's Liability Act to recover damages for the injuries thus occasioned.

The jury returned a verdict in his favor for $4500. The defendant filed a motion for new trial, one ground of which was to the effect that the verdict was excessive. The trial court suggested a remittitur of $3500, which the plaintiff made under protest. Judgment for $1000 was then rendered against the defendant and it has appealed to this court and has assigned errors. The plaintiff has filed the record for writ of error and has assigned error on the action of the trial court in suggesting the remittitur.

The first insistence of the defendant is that the proof shows that the plaintiff was not in the employ of the defendant but was in the employ of the Tennessee & Carolina Southern Railway Company, a separate and distinct corporation and legal entity.

As we gather from the record there was a corporation known as the Knoxville & Bristol Railroad which owned a railroad line extending from Morristown to Corryton by way of Tate Springs. There was another corporation known as the Knoxville & Augusta Railroad which owned a line extending from Knoxville to Maryville. There was still another corporation known as the Tennessee & Carolina Southern Railway Company which owned a line extending from Maryville to Calderwood.

The defendant, Southern Railway Company, became the absolute owner of the lines of the first two corporations and said two corporations thereafter lost their legal existence. Said Southern Railway Company operated said two first mentioned lines as a part of

its general interstate system but dealt with them as separate and distinct divisions and kept its books as to them accordingly. The Southern Railway Company became the owner (we assume from the record of the capital stock) of the Tennessee & Carolina Southern Railway Company, but kept its corporate entity alive. It (the Southern Railway Company) operated its trains over said line from Maryville to Calderwood and used said line as a part of its general interstate system. The Southern Railway Company maintained and repaired said line, used its own equipment over it, and treated it just as it did all of its other lines except that it kept a separate set of books as to it. The same officials who had charge of the lines which the Southern Railway Company had acquired from the Knoxville & Bristol Railroad and the Knoxville & Augusta Railroad also had charge of said line from Maryville to Calderwood. They were all in the employ of the Southern Railway Company and received their salary checks from it. However, separate passes were issued to them as to each of the three lines, but signed by the same men who signed their Southern Railway Company passes.

All of the men (such as plaintiff) received their salaries from the Southern Railway Company, and the only difference we can see between them and an ordinary employee of the Southern Railway Company was that the Southern Railway Company on its books at Washington, D. C., kept a separate account as to the Tennessee & Carolina Southern Railway Company and made charges against it for operating and maintenance expenses upon some sort of a mileage basis. But certain it is that said line for all practical intents and purposes was a line of the Southern Railway Company, and the employees who worked on it were employees of the Southern Railway Company, and said Tennessee & Carolina Southern Railway Company as a corporation was at the very most a mere dummy.

Prior to February 15, 1925, the plaintiff had been working on the line from Knoxville to Maryville which had originally belonged to the Knoxville & Augusta Railroad, but on that date he was transferred to the line between Maryville and Calderwood where he was still working at the time of the accident on or about June 1, 1925.

He testified that he was in the employ of the defendant, Southern Railway Company, and the foregoing is the strongest showing it could make to the contrary. The first insistence of the defendant is, therefore, overruled.

The next insistence of the defendant is that there was no showing of negligence upon the part of it or its employees; that the risk of this accident was one of the ordinary risks of the employment which the plaintiff assumed; and that the plaintiff's injury was the result of an unavoidable accident.

The plaintiff was a section foreman and had five or six men working under his direction and control at the time of the accident which happened near Bacon Ferry on the line between Maryville and Calderwood. It is undisputed that the work they were doing brought them within the provisions of the Federal Employer's Liability Act, and that said act governs and controls the case.

At the place of the accident the track was in a cut some ten or twelve feet deep. Five of the men were down in the cut and were loading new cross-ties onto a small car so that they could distribute them along the track at the points where they were needed. One of the men, John Brackett, was on top of the bank throwing the ties down to the men in the cut. The ties were in stacks on top of the bank but near the edge. The stacks were four or five ties high, and each tie was about nine inches thick.

Most of the ties in the stacks were good ones but there were some "culls" in them. Plaintiff instructed Brackett to throw the good ties down into the cut, and to simply throw the culls to one side. He warned Brackett to be careful not to injure any of the men in the cut. He also told Brackett that he (plaintiff) would mark the ends of the culls in the stacks with a piece of blue chalk so that Brackett would know which ties to throw into the cut and which ones to throw aside. Plaintiff then examined and marked the cull ties in the first stack and then Brackett began his work of pulling the ties from this stack and throwing them into the cut. Plaintiff passed on to the next stack, which was only about six feet from the first stack, and marked the cull ties in it. Then he walked to the stack (first stack) upon which Brackett was working and stood at or near the opposite side or end of it from where Brackett was. He turned his back to Brackett for an instant and looked at the men in the cut. He and Brackett both say they were or had been talking, but it seems that Brackett did not see plaintiff at the time he pulled from the stack the cull which struck plaintiff. Brackett pulled or jerked this cull from the stack and let it fall or roll onto some other culls which he had already pulled from the stack. When it struck these other culls one end of it "slewed" around and struck plaintiff on the shin between the foot and knee and inflicted the injuries complained of. Brackett saw plaintiff and called a warning to him but he saw plaintiff too late and called the warning too late to avoid the accident.

Since Brackett knew that plaintiff was and would be near him and the stack upon which he was working—particularly as there were other nearby stacks to be marked—it seems to us that he, as a reasonably prudent man, in throwing off the culls should have been upon the lookout so as not to throw off a cull in such a manner and at such a time that it would strike plaintiff, and we think it was a

question for the jury to say whether under the facts and circumstances Brackett was negligent. The jury having found that he was negligent, we do not think that we would be justified in disturbing their finding. Since plaintiff did not assume the risk of this negligence of Brackett, the second insistence of the defendant will be overruled.

We have considered the plaintiff's assignment of error, but we do not think the trial court was in error in suggesting the remittitur, and said assignment will therefore be overruled.

It results that in our opinion there was no error in the judgment of the lower court and the same will be affirmed. The costs of the appeal will be adjudged against the defendant and the sureties on its appeal bond, and the costs incident to the filing of the record for writ of error will be taxed against the plaintiff.

Portrum and Snodgrass, JJ., concur.